UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | | |
|---|---|---|
| MELISSA WILSON, JOSH WILSON, and ESTATE OF NICHOLAS HUNTER WILSON, | ) ) ) | Civil No. 07-152-GFVT |
| | ) ) | |
| Plaintiffs, | ) ) | **MEMORANDUM OPINION** |
| | ) | |
| V. | ) ) | |
| | ) | |
| BIG SANDY HEALTHCARE, INC., ANGELA K. MAGGARD, M.D., JOANNA SANTIESTEBAN, M.D., and UNKNOWN DEFENDANTS | ) ) ) ) | |
| | ) ) | |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

That the citizens may not sue the king is a principle as old as the common law.  "By the time of Bracton (1268) it was settled doctrine that the King could not be sued *eo nomine* in his own courts.  Jaffe, Louis L., Suits Against Governments and Officers: Sovereign Immunity, 77 Harv. L. Rev. 1, 2 (1963).  For us, rejection of a monarch, did not include rejection of this protection.  *United States v. Sherwood*, 312 U.S. 584, 586 (1941).  And while the sovereign may waive this immunity, it does so on its own terms.  *United States v. Orleans*, 425 U.S. 807 (1976). Hence, tort actions may be brought against federal employees but only after an administrative process is exhausted and only in the context of a bench trial.  *See* 28 U.S.C. §§ 2671-2680 (known as the Federal Tort Claims Act ("FTCA")).

But what about suits brought against private parties that are part of a federally-supported

program?  May they be deemed "federal" and shielded from litigation except to the extent

waived by the sovereign?  And, if so, must plaintiffs be put on notice that this is the case?  Those

are the questions presented here.  Because the Court answers the first two yes, and the third no,

this matter will be dismissed.

## I.

## BACKGROUND

This controversy began in the Floyd Circuit Court in the spring of 2007 when the

Plaintiffs, Melissa Wilson ("Melissa"), Josh Wilson ("Josh") and the Estate of Nicholas Hunter

Wilson (the "Estate") (collectively the "Wilsons") filed suit against Big Sandy Healthcare, Inc.

("BSH") and two of its employees, Angela K. Maggard, M.D. ("Dr. Maggard"), and Joanna

Santiesteban, M.D. ("Dr. Santiesteban"). [R. 1, Attach. 1].  In their Complaint, styled as *Melissa*

*Wilson, et al v. Big Sandy Healthcare, Inc., et al*, Floyd Civil Action 07-CI-765, the Wilsons

allege that the clinic and doctors committed certain common law torts during the scope of their

employment. [Id.].  Melissa was a patient at BSH during her pregnancy with Nicholas, and

received treatment from Drs. Maggard and Santiesteban.  Sadly, her son suffered from a severe

birth defect, alobar holoprosencephaly, which resulted in his death shortly after he was born.

Among other things, the Wilsons claim that the medical care providers were negligent and

committed the tort of outrage by failing to diagnose this defect in the infant before he was born.

On July 10, 2007, the United States filed a Notice of Removal[1] invoking this Court's

---

[1]The Wilsons tangentially argue that the there is no proof that the United States filed the Notice of Removal within fifteen days as they believe is required by 42 U.S.C. § 233(l)(1). [R. 5, 8-9].  The Wilsons misinterpret the procedures under the statute.  Section 233(l)(1) establishes a fifteen day time period by which the United States must appear in a particular action and give notice that the named defendants were Public Health Service employees for purposes of the Act.

original jurisdiction pursuant to 28 U.S.C. §§ 233(c) and 2679 which provides for federal court jurisdiction of such actions in which the United States is a party. [R. 1]. Along with its Notice, the United States tendered the requisite certification from the United States Attorney that the named defendants were acting within the scope of their federal employment at the time the alleged torts occurred. [Id., Attach 2; R. 4, Attach. 1].

The next day, the United States filed its Motion to Dismiss arguing that the Wilsons failed to exhaust their administrative remedies, as required by 28 U.S.C. § 2675(a) and 39 C.F.R. §912.5 to successfully pursue a civil action under the FTCA. [R. 3]. In support, the United States tendered an affidavit of Richard G. Bergeron noting that no record of an administrative tort claim by the Wilsons existed. [Id., Attach. 2].

The United States also provided the written notices from the Attorney General and Secretary of Health and Human Services to BSH which "deem" it an employee of the federal government for purposes of the Federally Supported Health Centers Assistance Act of 1992 ("FSHCAA"), 42 U.S.C. 233.. [*Id.*, Attach. 5; R. 7, Attach. 1]. Those documents also "deem" the BSH employees who are providing healthcare services within the scope of the Act to be federal employees. [Id.]. Finally, these letters inform BSH of the malpractice coverage afforded to it based on its status as a federal employee. [Id.]. The Bergeron affidavit also certifies that official agency records reflect that Drs. Maggard and Santiesteban were employees of BSH during the relevant time period as alleged in the Wilsons' complaint. [R. 3, Attach. 2]. Thus, all

_____

Removal, on the other hand, is addressed in 42 U.S.C. 233(c), and permits a civil action to be removed at any time once the deeming and scoping have been decided. See also *Celestine v. Mt. Vernon Neighborhood Health Center*, 289 F.Supp.2d 392 (S.D.N.Y. 2003) (rejecting argument that Section 233(l) supplanted 233(c) and held that removal before trial began in state court was proper).

named defendants have "federal employee" status as Public Health Service employees under the FSHCAA.

Given the invocation of this statute, the United States also filed a Motion to Substitute Party, the United States, for the named defendants herein pursuant to 28 U.S.C. §233(a). This provision provides that an action against the United States is the exclusive remedy when the healthcare providers are deemed federal employees pursuant to the FSHCAA. [R. 4].

With respect to the Motions, the Wilsons do not dispute that they failed to pursue an administrative tort claim as required by the applicable statute. [R. 5]. Rather, they contend that the FSHCAA is unconstitutional as applied to them. They argue this is so because they did not receive the notice they believe is required by 42 U.S.C. §233(o). First, they believe they should have been informed that the medical providers named herein were federal employees. Second, they argue that they should have been informed that by allowing them to perform services they were forfeiting certain legal rights including the right to trial by jury. [Id.]. The Wilsons maintain that the failure to provide this notice violates their common law Seventh Amendment right to a jury trial because the FTCA is the exclusive remedy for torts against the United States and allows only bench trials. [Id.]. Although they do not articulate how, they make a blanket statement that enforcement of the FTCA against them (i.e., by making it their exclusive remedy via 42 U.S.C. § 233) violates their Fifth and Fourteenth Amendment rights as well. [Id.]. In fact, they state that the existence of the right alone "should be sufficient without other citation of authority." [R. 5, 8-9].

Next, the Wilsons filed a Motion to Remand based on lack of subject matter jurisdiction. [R. 8-9]. In this Motion, the Wilsons raise no new arguments other than those made in response

4

to the government's Motion to Dismiss and Substitute parties.  Rather, they repeat verbatim their earlier statements regarding the unconstitutionality of the FTCA as applied to them because they did not receive the "required" notice of the healthcare providers' status as federal employees. [Id.].  In support, the Wilsons attach an affidavit of Melissa Wilson affirming that she did not receive affirmative notice of these named defendants' federal employee status, as well as the returned civil summons from the state court action. [Id., Attach. 2-5].  In addition, the Wilsons reference a paragraph in their state court complaint where they claim to be unaware they were forgoing any jural rights by utilizing the services with the named defendants. [R. 9].

Finally, Anthem has filed a Motion to Intervene.  [R. 13].  It believes it should be allowed to do so, having paid claims on behalf of the Wilsons for the care they received at BSH.

## II.

## DISCUSSION

## A.

In response to concerns about the shortage of healthcare services available to what it considered medically underserved areas,[2] Congress enacted the FSHCAA.  Statutorily, the FSHCAA amends former Section 224 of the Public Health Services Act.  *See* 42 U.S.C. § 233. Essentially, by application to the Secretary, an entity becomes "deemed" a Public Health Services employee – a federal employee.  *Id*. at §233(g)(1)(A), (D).  Notably, this determination rests exclusively with the Secretary and is "final and binding upon the Secretary and the Attorney General and other parties to any civil action or proceeding."  *Id*. at §233(g)(1)(F).  In exchange,

---

[2]Section 254b of Title 42 allows Congress to make grants and loans to certain health centers that provide medical services to medically underserved geographic areas and/or populations as those areas have been defined by the Secretary of Health and Human Services.

the deemed, qualifying healthcare facilities and certain employees forgo obtaining private insurance in favor of the United States becoming the malpractice insurer. *Id*. at §233(g)(1)(A), (4). The monies saved on private malpractice coverage are then available to provide additional health care services.

As part of this process, the entity is relieved of liability for any tort claims and the United States becomes the only defendant with the Attorney General obligated to defend the claim. *Id*. at §233(a)-(b); 28 U.S.C. §2679. As a classic example of the waiver of sovereign immunity, and to effectuate its goals, the PHSA provides that the remedy authorized by the FTCA is "exclusive of any other civil proceeding by reason of the same subject-matter" for those acts covered by the PHS employee's scope of employment. *See* 42 U.S.C. § 233(a); 28 U.S.C. §§ 1346(b), 2401, 2672. Those acts include the performance of medical functions like those raised by the Wilsons here. *Id*. at § 233(a). The Attorney General must provide a certification that the acts complained of arose out of the scope of the federal employment. This certification has been delegated to the Attorney General by virtue of 28 C.F.R. §15.4, and is conclusive as to this determination. 28 U.S.C. § 2679(d)(2) ("This certification of the Attorney General shall conclusively establish scope of office or employment for purposes of removal."). The practical effect is that when a deemed entity is sued for these medical torts, they are dismissed and the United States is substituted as the sole defendant. *See* 28 U.S.C. § 2679(d)(2).

The instant action represents the most common implementation of the aforementioned statutory framework. For almost 35 years, BSH has served as a non-profit clinic providing healthcare services to an underserved area of eastern Kentucky. BSH receives federal funding under the PHSA for this very purpose. [R. 3, Attach. 5; R. 7, Attach. 1]. After proper application

to the Secretary, BSH was deemed a Public Health Services employee as were its physicians, Drs. Maggard and Santiesteban. [Id.]. BSH and its qualifying employees have been so deemed since 1993. [Id.] Consequently, under the statutory framework described herein, BSH and these doctors allowed the United States to provide its malpractice coverage under the FSHCAA, and as a result, FTCA coverage existed for the acts or omissions committed within the scope of their employment. There is no dispute that the acts complained of herein constitute such actions as defined by Section 233.

### B.

This Court must decide first whether the Constitution prohibits private parties that are part of a federally supported program from being deemed "federal employees" pursuant to the FSHCAA. The Wilsons argue that the clinic and doctors should not be considered federal employees even in light of the Supreme Court's decision in *Osborn v. Haley*, 127 S.Ct. 881 (2007).

Pat Osborn, a former employee of a contractor for the United States Forest Service, brought suit against an employee of the Forest Service alleging tortious interference with employment. *Id.* at 889. Upon receiving notice of the suit, the United States invoked the Westfall Act, which provides for substitution of the United States as a defendant and complete immunity for suits arising out of the employee's scope of federal employment. *Id.* The scope of employment determination is made, like in the FSHCAA, by the Attorney General certification. Similarly, it is a final and binding determination. *See* 28 U.S.C. § 2679(d)(2). Again, like the FSHCAA, this certification results in the exclusive remedies provided by the FTCA. *See id*.

The question of "'who decides'" federal status for purposes of applying these acts did not

go unnoticed by the *Osborn* court, nor did the fact that the answer to the question could deprive a plaintiff of a jury trial.  In fact, this was the question resolved by the opinion.  The Court specifically said, despite the discretionary nature of the Attorney General decision, the certification and deeming decision made by the Attorney General under the Westfall Act must be respected as Congress has determined that the right to a jury trial is supplanted in certain covered cases.  *Id*. at 900.

Further, the Court, noting prior precedent, reiterated that the "Seventh Amendment, which preserves the right to a jury trial in suits at common law...does not apply to proceedings against the sovereign."  *Id*. (citing *Lehman v. Nakshian*, 453 U.S. 156 (1981).  See also § 2402 (actions against the United States ordinarily "shall be tried by the court without a jury.")).  Thus, the Supreme Court held that at the time the district court considers the Attorney General's certification, "the plaintiff has no right to a jury trial."  *Id*. (citations omitted).  In reaching this conclusion, the Court respected the intent of Congress in determining that the United States should be the substituted defendant and a jury trial would be supplanted in certain instances, and further, that the result achieved the goals of the act by "relieving covered employees from the cost and effort of defending the lawsuit, and to place those burdens on the Government's shoulders.  *Id*. at 900-901 (citations omitted).

The U.S. Supreme Court has made clear that "the plain meaning of legislation should be conclusive" except in the rare case where such literal application is inconsistent with the intent of the drafters.  *United States v. Ron Pair Enter. Inc.*, 489 U.S. 235, 242 (1989).  Here, the FSHCAA sets forth the parameters whereby the Secretary of Health and Human Services is to deem an entity and its qualifying employees as federal employees for purposes of the FTCA.  42

U.S.C. § 233(g).  Once that decision is made, Congress held that it shall be final and binding.  *Id.*
Accordingly, the United States should be substituted as the proper defendant and the action one
falling under the ambit of the FTCA and the right of a jury trial is removed.

In this case, BSH and its employee-physicians, Drs. Maggard and Santiesteban were
deemed federal employees in light of their employment status with BSH and its receipt of federal
funds and grants to provide medical services to a designated underserved area.  Importantly, the
doctors were not contractors of a separate professional association, but employees of BSH.  *See,
e.g., Dedrick v. Youngblood*, 200 F.3d 744 (11th Cir. 2000) (considering physician status under §
233(g) to determine eligibility under the FHSCAA); *Cruz v. United States*, 70 F. Supp. 2d 1290
(S.D. Fla. 1998) (same).  The torts alleged by the Wilsons fall within the scope of that covered
employment as certified by the Attorney General.  Thus, the United States is the only proper
defendant.  Consequently, the state court action herein falls squarely within the FTCA and as
such, provides the exclusive remedy for the Wilsons despite their loss of a jury trial under the
Seventh Amendment.  Using the rationale of the *Osborn* Court, no constitutional violation
occurred under the aforementioned statutory framework.  The deeming and certification
decisions must be respected given the Congressional intent and purpose set forth by the
FSHCAA.  *See also Allen v. Christenberry*, 327 F.3d 1290, 1296 (11th Cir. 2003) (recognizing
the conclusive effect of the FSHCAA deeming and certification provisions).

The Wilsons contend that the *Osborn* decision is inapplicable because the facts therein
involved a "true" government employee rather than a "deemed" one.  The Wilsons are correct in
the sense that what was at issue there was whether the Attorney General properly determined the
scope of federal employment, rather than what is at issue here, whether the entity should enjoy

federal status at all.  Although not explicitly on all fours with the instant question, some guidance can be gleaned from the reasoning of *Osborn*.

The initial "deeming" decision by the Secretary is certainly less discretionary than the certification made by the Attorney General regarding the scope of employment which is at issue in *Osborn*.  BSH was required to make an application, which was considered, and then reconsidered over time and continually re-affirmed.  Certainly, if the more discretionary scope of employment challenge articulated in *Osborn* passes muster, then so does the original deeming process which occurred here.  Likewise, though not challenged, the certification by the Attorney General which occurred presents no constitutional violation.  Both are powers delegated by congress and determined to be final and conclusive of the issue.  *See* 42 U.S.C. § 233(g)(1)(F); 28 U.S.C. 2679(d)(2); *Osborn*, 127 S.Ct. at *900; Allen,* 327 F.3d at 1296; *see also Alexander v. Mt. Sinai Hosp. Medical Ctr.*, No. 05-1823, 2007 WL 1189489, *1, *6-8 (7th Cir. Apr. 17, 2007).

In its Reply brief, the United States correctly points out that the FSHCAA has never been subject to constitutional challenge. [R. 12].  Nonetheless, it aptly recognizes that many other similar statutory schemes have withstood such challenges.  *See, e.g, Salmon v. Schwarz*, 948 F.2d 1131 (10th Cir. 1991) (Westfall Act); *see also In re Consolidated U.S. Atmospheric Testing Litigation*, 820 F.2d 982 (9th Cir. 1987) (holding Nuclear Radiation Act constitutional); *Hammond v. United States,* 786 F.2d 8 (1st Cir. 1986) (same); *DiPippa v. United States*, 687 F.2d 14 (3rd Cir. 1982) (Swine Flu Act); *Carr v. United States*, 422 F.2d 1007 (4th Cir. 1970) (Federal Driver's Act).

For example, in *Hammond*, a widow filed suit against certain private contractors in Massachusetts state court seeking damages for the death of her husband who was a civil

employee of Department of Defense.  786 F.2d at 9.  The wrongful death suit charged that the contractors were negligent in failing to protect her deceased husband from unnecessary radiation exposure.  *See id*.  The defendants removed to federal court and during the pendency of the action, Congress enacted the Department of Energy National Security and Military Applications of Nuclear Energy Authorization Act of 1985, codified at 42 U.S.C. § 2212 ("the Nuclear Radiation Act"), which, like the FHSCAA here, provided for "federal employee" status for any contractor "carrying out an atomic weapons testing program under a contract with the United States" and exclusive federal court jurisdiction for "any civil action for injury, loss of property, personal injury, or death due to exposure to radiation based on acts or omissions by a contractor." *Id*. at 10 (citing 42 U.S.C. § 2212(a)-(b)).  The Attorney General certified the contractor as "an atomic weapons contractor" and then the court granted the motion to substitute the United States as the defendant.  *See id*. at 10.  In addition, the action was dismissed for failure to exhaust administrative remedies under the FTCA.  Like the Wilsons here, the widow challenged the constitutionality of the statute under the Fifth, Seventh, Ninth, and Tenth Amendments to the U.S. Constitution.  *Id*. at 11.  The First Circuit rejected these arguments and held that the application of the Nuclear Radiation Act, and by implication the FTCA, to this plaintiff did not run afoul of any constitutional protections.

The First Circuit concluded that § 2212 did not improperly deprive Hammond of a cause of action under the due process clause of the Fifth Amendment because common law and state statutory rights are not "vested" rights subject to constitutional protection because they do not "vest until there is a final, unreviewable judgment."  *Id*. at 12.  Nonetheless, even under a rational basis review, the Court concluded that the retroactive applicability of the statute and its effect of

11

abolishing her cause of action passed constitutional scrutiny. *See id*. at 13. In so holding, the First Circuit noted the significant number of instances in which Congress had through statutory enactment, exercising its commerce and war powers, substituted the United States as a defendant and required a plaintiff to proceed under the FTCA. *See id*. Specifically, the court noted that the application of the FTCA did not "block" the plaintiff's right of access to the courts to seek enforcement of the law against a defendant. *See id*. Rather, it was simply a "matter of Congress altering her prior rights and remedies. There is no fundamental right to particular state-law tort claims." *See id*. Further, the court considered the congressional purpose behind the statute's enactment and noted the necessity of utilizing private entities to implement its goals and the benefits of substitution of the sovereign defendant. *See id*. at 13-14. Accordingly, the private contractors, acting at the behest and on behalf of the United States, were entitled to the protections and benefits of immunity under the FTCA. *See id*.

With respect to the remaining constitutional challenges, the First Circuit likewise concluded that no taking had occurred under the Fifth Amendment because the plaintiff "had no vested property right in her tort cause of action" and found "no violation of equal protection for the same reasons [it] found no violation of due process." *See id*. at 15. As for the Seventh Amendment claims, the appellate court noted the lack of a right to a jury trial against the sovereign. Just as the "United States can abolish the right to a cause of action altogether it can also abolish the right to a jury trial that is part of it. When the United States abolishes a cause of action and then sets up a separate administrative remedy against itself, as it has here, the seventh amendment does not require that it must also provide a jury trial." *See id*. Nor did the application of the Act in question violate her Ninth or Tenth Amendment, or any other rights

12

asserted by the plaintiff.  *See id.* at 15-16.  Thus, the preclusion of recovery against individual defendants by requiring the substitution of the United States as the party defendant was constitutionally permissible.  Although the application of the Nuclear Radiation Act effectively extinguished a state law action, it did not violate the constitutional rights of the plaintiffs now forced to litigate within its parameters.  And neither does the FHSCAA here.

## C.

Having concluded that the Constitution does not prohibit the doctors from being deemed federal employees, the Court turns to whether the constitution requires that the Wilsons be notified of this fact and the accompanying "loss" of rights.  To hold that the Wilsons were somehow entitled to this notice runs afoul of the literal language of the statute and would frustrate the intent of Congress in enacting the FSHCAA.  *See United States v. Ron Pair Enter. Inc.*, 489 U.S. 235, 242 (1989) ("the plain meaning of legislation should be conclusive" except in the rare case where such literal application is inconsistent with the intent of the drafters).  The explicit language of the statute allows the Secretary to deem an entity a federal employee and makes that conclusive as to "the Secretary and the Attorney General and other parties to any civil action or proceeding."  *Id*. at §233(g)(1)(F).

The rationale behind the FSHCAA underscores this point.  Its enactment was intended to cure what the federal government perceived as a healthcare crisis in medically underserved areas, an arena where the United States government expends a great deal of funds and energies, through the Public Health Services Act.  The FSHCCA, as an amendment thereto, allows healthcare providers the benefit of additional funds to provide actual healthcare by subsidizing, or completely providing the malpractice insurance, and the effect of which is to free up funds for

13

additional healthcare to needy areas.  In so doing, the United States takes the burden of defending

claims arising out of those acts on its shoulders rather than place that burden on an already

financially-struggling entity.  Because these entities are providing healthcare to a populous, both

on behalf of the United States and often "deemed" to be in its stead, then those entities receive

the benefit of the FTCA.

Presumably, Congress believes that the Wilsons should not receive the benefit of the

availability of healthcare under the FSHCAA and then be able to reject the "burden" that comes

with a sovereign defendant.  And, it is within the sole discretion of the sovereign to determine the

circumstances and set out the parameters under which it will shed the cloak of sovereign

immunity.  *See*, *e.g.*, *United States v. Testan*, 424 U.S. 392 (1976) ("It long has been established,

of course, that the United States, as sovereign, 'is immune from suit save as it consents to be

sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to

entertain the suit.'") (citing  *United States v. Sherwood*, 312 U.S. 584 (1941)).

As with all similarly drafted statutes which allow substitution of the United States as a

defendant, the FSHCAA creates a situation where a plaintiff sues a certain individual defendant

and then finds themselves faced with a different defendant in the United States.  And

consequently, plaintiffs are afforded a bench trial rather than one by jury.  Nonetheless, courts

have uniformly held that the bench trial requirement of the FTCA is appropriate.  *See Carlson v.*

*Green*, 446 U.S. 14, 22 (1980) (affirming that no jury trial is available under the FTCA).

Certainly, federal district judges are presumed to provide a fair and impartial analysis of the facts

and issues presented by a complaint.  *See United States v. Muniz*, 374 U.S. 150, 163 (1963) ("We

are confident that district judges, sitting without a jury as required by 28 U.S.C. § 2402, will be

14

able to dispose of complaints intelligently....").

Importantly, the notice provision cited by the Wilsons does not alter this conclusion because it is inapplicable here.  Section 233(o) of Title 42 requires only those employees who are volunteers of an entity which provides free services to provide notice of their limited liability.  BSH was not a free clinic, the doctors were not volunteers and the Wilsons did not receive free services.  In fact, their private insurance company has sought to intervene in this action based on their payments of over $60,000 toward the services rendered to the Wilsons. [R. 13].  Therefore, this provision does not bear on the notice issues raised herein.  Notice was simply not required in this context by either statute or constitutional proscription.

**D.**

As to the remainder of the Wilsons constitutional challenges under the Fifth and Fourteenth Amendments, the Court concludes they too lack merit.  Because the Wilsons make this challenge in one sentence, without reference to exactly how and which rights were allegedly violated, and importantly, without reference to any legal authority to support their proposition, the Court addresses them in an equally cursory manner.

The Wilsons contend that the FSHCAA violates their Fifth Amendment rights.  They imply that by allowing this action to be one reserved exclusively under the FTCA, their cause of action at state law has been "taken" unconstitutionally.  Courts considering similar claims under similar statutes have answered this question in the negative.  A plaintiff has no vested right in any potential tort claim for damages under state law.  *See*, *e.g.*, *In re Consolidated U.S. Atmospheric Testing Litigation*, 820 F.2d 982 (9th Cir. 1987); *Hammond v. United States*, 786 F.2d 8, 12, 15 (1st Cir. 1986); *Cooperativa de Ahorro y Credito Aguada v. Kidder, Peabody &*

*Co.*, 993 F.2d 269, 273 (1ˢᵗ Cir. 1993); *Ducharme v. Merrill-National Laboratories*, 574 F.2d

1307, 1309 (5ᵗʰ Cir. 1978).  This is true even when the substitution of the United States "results

in denial of the claimant's cause of action."  *Miller v. United States*, 73 F.3d 878, 880 (9ᵗʰ Cir.

1995) (citations omitted).

Likewise, the exclusive remedy provided by the FTCA does not violate due process under

the Fifth Amendment.  In fact, "an act of Congress comes to us clothed with a presumption of

constitutionality, and the burden is on the plaintiff to show that it violates due process."

*Hammond v. U.S.*,  786 F.2d 8, 12 (1ˢᵗ Cir. 1986) (citing *Usery v. Turner Elkhorn Mining Co.*,

428 U.S. 1, 15, 96 S.Ct. 2882, 2892, 49 L.Ed.2d 752 (1976); *McGowan v. Maryland*, 366 U.S.

420, 425-26, 81 S.Ct. 1101, 1104-05, 6 L.Ed.2d 393 (1961)).  Here, the Wilsons fail to meet this

burden.

First, the Wilsons cite to no legal authority to support their proposition, whether directly

on point, or even by analogy.  Second, those cases considering statutes like the FSHCAA have

concluded the opposite of what the Wilsons urge.  For example, in *Hammond*, the First Circuit

employed the "rational basis" test to conclude that "the substitution of the United States as

defendant in all suits against private contractors to the government for radiation injuries arising

from any of the United States atomic weapons testing programs, and makes the Federal Tort

Claims Act, 28 U.S.C. §§ 1346(b), 2671-80, the sole remedy for those injuries" did not violate

the due process clause of the Fifth Amendment.  *Id*. at 12-15; *see also Salmon v. Schwarz*, 948

F.2d 1131 (10ᵗʰ Cir. 1991).

Next, the Wilsons argue that the FSHCAA violates their Equal Protection rights under the

Fourteenth Amendment.  Again, because they do not articulate any specific violation other than a

16

generalized grievance, this Court is left to fashion both the argument and the result for these plaintiffs. As the United States Supreme Court has noted "[a] statutory classification in the area of social welfare is consistent with the Equal Protection Clause of the Fourteenth Amendment if it is 'rationally based and free from invidious discrimination.'" *Richardson v. Belcher*, 404 U.S. 78, 81 (1971) (citing *Dandridge v. Williams*, 397 U.S. 471, 487, 90 S.Ct. 1153, 1162, 25 L.Ed.2d 491). In *Richardson*, the Court also noted that "while the present case, involving as it does a federal statute, does not directly implicate the Fourteenth Amendment's Equal Protection Clause, a classification that meets the test articulated in *Dandridge* is perforce consistent with the due process requirement of the Fifth Amendment." *Id*. (citations omitted). In this case, the Supreme Court held that the Social Security Act provision, part of the Public Health Services Act, for offset did not violate either the Fifth Amendment substantive due process or Fourteenth Amendment equal protection clauses.

An application of the rational basis test to the instant statute, which is also part of Section 224 of the Public Health Services Act, requires the same conclusion reached in *Richardson* regarding the contested provision of the Social Security Act - it is constitutional. To violate the Wilsons' Fifth Amendment due process rights, or their Equal Protection Rights under the Fourteenth Amendment, they would have to show that the FSHCAA is "wholly arbitrary and irrational in purpose and effect, *i.e.,* not reasonably related to a legitimate congressional purpose." *Hammond*, 786 F.2d at 13 (citing *United States R.R. Retirement Bd. v. Fritz,* 449 U.S. 166, 174-77, 101 S.Ct. 453, 459-60, 66 L.Ed.2d 368 (1980); *Vance v. Bradley,* 440 U.S. 93, 97-98, 99 S.Ct. 939, 942-43, 59 L.Ed.2d (1979)). As noted earlier, and as clearly articulated by the United States in its brief, the FSHCAA was enacted as an amendment to Section 224 of the

17

Public Health Services Act in response to concerns about the shortage of healthcare services available to what it considered medically underserved areas.[3] [R. 12].  An entity like BSH becomes "deemed" a Public Health Services employee, and it and certain employees are permitted to forgo obtaining private insurance in favor of the United States becoming the malpractice insurer. The monies saved on private malpractice coverage are then available to provide additional healthcare services to these medically underserved areas.  Again, the Wilsons make reference to no contrary authority or even articulate exactly how this act fails to pass constitutional muster under this standard.  Therefore, under the articulated rationale, and these facts, this Court concludes that the FSHCAA is not "wholly arbitrary and irrational in purpose and effect" because it is reasonably related to a legitimate congressional purpose.

Accordingly, because the Court finds that the FSHCAA is not unconstitutional as applied to the Wilsons, the United States' Motion to Substitute must be granted.  Further, the Acts provide for removal and exclusive federal jurisdiction in this situation.  42 U.S.C. § 233(a), (c); *see also Cuoco v. Moritsugu*, 222 F.3d 99 (2nd Cir. 2000) (applying the substitution and exclusivity of the provisions of the FSHCAA and the FTCA).  Therefore, the Wilsons' Motion to Remand must be denied.

### E.

Having concluded that the FSHCAA is constitutional as applied to the Wilsons, the Court now considers the Motion to Dismiss filed by the United States based on the exhaustion requirement under the relevant acts.  Again, the Court notes that the ability to sue the United

---

[3]Section 254b of Title 42 allows Congress to make grants and loans to certain health centers that provide medical services to medically underserved geographic areas and/or populations as those areas have been defined by the Secretary of Health and Human Services.

States can only occur on terms to which the sovereign consents, *see Garrett v. United States*, 640

F.2d 24, 25 (6th Cir. 1981) (citations omitted), and one of those preconditions to suit is the

exhaustion requirement:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, *unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.*

28 U.S.C.A. § 2675(a) (emphasis added).  A claim is "presented" when "the U.S. Postal Service

receives from a claimant, his duly authorized agent or legal representative, an executed Standard

Form 95, Claim for Damage or Injury, or other written notification of an incident, accompanied

by a claim for money damages in a sum certain for injury to or loss of property, personal injury,

or death alleged to have occurred by reason of the incident."  39 C.F.R. § 912.5(a).  The

exhaustion of administrative remedies is jurisdictional, a matter which must be strictly construed,

and one which cannot be waived in this instance:

> The requirement in 28 U.S.C. § 2675(a) that an administrative claim be filed as a prerequisite to filing a civil action under the Federal Tort Claims Act and the two year statute of limitations prescribed by 28 U.S.C. § 2401(b) are valid conditions under which suits may be maintained under the statute. These conditions are jurisdictional requirements, not capable of waiver or subject to estoppel.

*Garrett*, 640 F.2d at 25; *McNeil v. U.S.*, 508 U.S. 106, 113 (1993) ("The FTCA bars claimants

from bringing suit in federal court until they have exhausted their administrative remedies.

Because petitioner failed to heed that clear statutory command, the District Court properly

dismissed his suit."); *Celestine v. Mt. Vernon Neighborhood Health Center*, 289 F.Supp.2d 392,

399-400 (S.D.N.Y. 2003) (dismissing malpractice action under FSHCAA for failure to exhaust

19

administrative remedies as required by FTCA).  Thus, unless the Wilsons properly pursued their administrative remedies prior to filing suit in state court, this Court lacks jurisdiction to hear this case.

In support of their failure to exhaust contention, the United States presented evidence by way of the Declaration of Richard G. Bergeron averring that the Wilson had not presented any administrative tort claim to the Department of Health and Human Services prior to instituting this state court litigation. [R. 3, Attach. 2].  He notes that he caused a search of relevant databases to be conducted and no evidence of any proceedings by the Wilsons existed. [Id.].  Perhaps most importantly, the Wilsons do not dispute this fact.  Accordingly, because the FTCA requires administrative exhaustion prior to filing suit, and the Wilsons have failed to comply with this jurisdictional requirements, the Motion to Dismiss must be granted and the matter dismissed without prejudice.

## F.

Finally, the Court will deny Anthem's Motion to Intervene without prejudice.  This action is being dismissed without prejudice due to the Wilsons failure to exhaust their administrative remedies; therefore, no litigation remains at the district court in which Anthem may intervene.  Obviously, if this litigation properly is re-instituted, Anthem may seek to intervene at that time.

## III.

## CONCLUSION

Accordingly, for the foregoing reasons, and all motions having been disposed of in accordance with the Order dated March 31, 2008 [R. 15], this matter shall be stricken from the active docket.

This the 2nd day of April, 2008.



**Signed By:**

**_Gregory F. Van Tatenhove_**

**United States District Judge**